DECISION AND JOURNAL ENTRY
{¶ 1} Appellant Carl F. Noll ("Husband") has appealed from a decision of the Lorain County Court of Common Pleas, Domestic Relations Division, which found him in contempt for failure to pay spousal support to Appellee Dayle A. Noll ("Wife") and sentenced him to thirty days in the county jail. This Court affirms.
 I {¶ 2} Husband and Wife were divorced in 1998, after twenty-seven years of marriage. As part of the divorce decree entered January 30, 1998, Husband was ordered to pay spousal support to Wife in the amount of $2,000 per month until such time that Wife begins to collect Social Security benefits, or until the earlier of either (1) the death of either party, or (2) upon the remarriage of Wife or her residing with a nonrelative male in a state similar to marriage. On April 22, 1999, Husband appealed the judgment of divorce, raising several issues for this Court's review: 1) the amount of spousal support awarded to Wife; 2) the valuation of Husband's law practice; 3) the determination that certain stocks were marital property; and 4) the disposition of the parties' 1997 income tax returns. Wife cross-appealed the trial court's denial of her request for attorney's fees. Noll v. Noll (June 7, 2000), 9th Dist. No. 98CA007042, (referred to as "Noll I").
 {¶ 3} On appeal, this Court affirmed in part, and reversed in part the decision of the trial court. Husband's arguments regarding the parties' 1997 tax returns were sustained by this Court. However, Husband's remaining arguments were overruled, along with Wife's cross-appeal. Id. at 2-13. This Court also remanded the matter to the trial court in order that the divorce decree be modified to include a continuing jurisdiction provision concerning spousal support. Id. at 13. On July 12, 2000, the trial court amended the divorce decree to include the required provision.
 {¶ 4} On February 6, 2001, Husband moved the trial court to terminate spousal support on the ground that there was a change in his economic circumstances. On May 3, 2001, Wife filed a motion to find Husband in contempt for failure to pay spousal support dating back to January 2001. A hearing was held on both motions on July 17, 2001. On August 31, 2001, the trial court denied Husband's motion to terminate spousal support and found him in contempt for failure to pay spousal support. The court also found him $13,338.53 in arrears on his support obligation. At the hearing on August 31, 2001, hearing, Husband was given an opportunity to purge his contempt by paying $5,000 of his arrearage on that date, then paying the balance by November 30, 2001. Appellant took no steps to purge his contempt and was scheduled for sentencing on December 6, 2001. Husband timely appealed the trial court's refusal to terminate spousal support and its finding of contempt; the trial court stayed its judgment pending appeal.
 {¶ 5} On August 14, 2002, this Court determined that the contempt order was not a final appealable order because "there was no imposition of a penalty or sanction" and, therefore, this Court lacked jurisdiction to hear the matter. Noll v. Noll, 9th Dist. Nos. 01CA007932, 01CA007976, 2002-Ohio-4154, at ¶ 14, appeal denied (2003),98 Ohio St.3d 1409 (referred to as "Noll II"). This Court did, however, have jurisdiction over the trial court's denial of Husband's motion to terminate spousal support and we affirmed the trial court's decision on this issue. Id. at ¶ 50. Husband appealed this Court's decision to the Ohio Supreme Court, which refused to hear the case.
 {¶ 6} At a sentencing hearing on January 17, 2003, the trial court entered judgment against Husband for contempt and remanded him to the custody of the Lorain County Sheriff's Department for a term of thirty days. Husband filed a motion with the trial court requesting a stay of the imposition of his thirty day sentence pending appeal. The trial court denied his motion. He then requested a stay from this Court which we granted on the condition that he post a $1,000 bond with the clerk of the trial court. Soon after, Wife filed a motion for reconsideration of our decision to grant Husband's stay. We denied her motion for reconsideration on February 18, 2003. Husband has timely appealed, asserting one assignment of error.
 II Assignment of Error
"The Trial Court Erred In Finding [husband] In Contempt For Failure To Pay Spousal Support."
 {¶ 7} In Husband's sole assignment of error, he has argued that the trial court erred when it held him in contempt for failure to pay spousal support. We disagree.
 {¶ 8} Before reaching the merits of this appeal, we must first determine whether this Court has jurisdiction to review the orders from which the parties have appealed. Section 3(B)(2), Article IV of the Ohio Constitution limits this Court's appellate jurisdiction to the review of final judgments of lower courts. For a judgment to be final and appealable, it must satisfy the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B). Chef Italiano Corp. v. Kent State Univ. (1989),44 Ohio St.3d 86, 88.
 {¶ 9} R.C. 2505.02 provides, in pertinent part:
"(B) An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment;
"(2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment [.]"
 {¶ 10} To be a final, appealable order, the order must also affect a substantial right. R.C. 2505.02(B)(1). A substantial right is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1).
 {¶ 11} Our determination that the order finding Husband in contempt was not a final and appealable order was based on the trial court expressly stating that Husband would be sentenced at a later date and then staying the sentencing hearing pending appeal. Noll II, supra, at ¶ 14. On January 17, 2003, the trial court imposed a thirty day sentence on Husband based on its August 31, 2001, finding of contempt and remanded him to the custody of the Lorain County Sheriff's Department. Because the imposition of jail time affects a substantial right, we find that the trial court's entry of the contempt order is now a final and appealable order properly before this Court on appeal.
 {¶ 12} "Contempt is the disobedience of a lawful court order."Wise v. Wise (April 14, 1999), 9th Dist. No. 19167, at 3, citing WindhamBank v. Tomaszczyk (1971), 27 Ohio St.2d 55, at paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." Windham Bank, 27 Ohio St.2d at paragraph two of the syllabus. Contempt proceedings can be either civil or criminal in nature.Denovchek v. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14, 16. The civil or criminal determination is based on the character and purpose of the sanctions imposed by the court as a result of the contempt. Id. Sanctions designed to benefit the complainant by remedying the contempt or coercing compliance with a court order are civil in nature, often marked by conditional sentences that may be purged if the contemnor chooses to remedy the contempt. See Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250, 253-54. Here, the trial judge repeatedly offered Husband the opportunity to purge his arrearage and remedy his contempt. Therefore, we find that the case at bar is a civil contempt matter.
 {¶ 13} This Court gives deference to a trial court's decision regarding a contempt order and "will not reverse a trial court's determination in a civil contempt proceeding absent an abuse of the trial court's discretion." Wise, supra, at 4, citing Carroll v. Detty (1996),113 Ohio App.3d 708, 711. Abuse of discretion is found when the trial court takes action that is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} In the case sub judice, Husband was found in contempt on August 31, 2001, due to the uncontested fact that he had failed to pay spousal support dating back to January 2001; the trial court determined that Husband was $13,338.53 in arrears at the time of judgment against him[1]. A court order to pay alimony, such as the one embodied in Husband's 1998 divorce decree, is viewed as prima facie evidence of the ability to pay. In re Frisbie (1927), 27 Ohio App. 290. Furthermore, pursuant to R.C. 3105.18(E), a trial court can modify an order for spousal support once it determines that the circumstances of either party have changed. Here, the trial court held, and we affirmed, that Husband's support obligation to Wife should not be terminated because Husband's circumstances had not substantially changed. Noll II, supra, at ¶ 50. Therefore, we conclude that Husband is imputed with the ability to pay his continuing support obligation and ensuing arrearage.
 {¶ 15} Husband's failure to pay his on-going support obligation absent substantially changed circumstances and the continuous arrearage he has incurred over more than two-and-a-half years fully supports the trial court's determination that a finding of contempt was its only and last option in this matter. In its August 31, 2001, decision, the trial court found that although changes had occurred in the practice of law over the last few years, Husband had not become disabled or otherwise unable to practice law at the level he had done in the past. Husband offered no testimony to indicate that tort reform had adversely impacted his personal injury practice specifically, nor did he cite any "new rule or statute that significantly impacted the value of any one particular case in his docket." Though Husband did put on expert testimony regarding the practice of personal injury law in the Cleveland area, the trial court found this testimony "[in]conclusive proof" of Husband's particular position as a lawyer. Based on these findings, the trial court found Husband in contempt and offered him the opportunity to purge his contempt.
 {¶ 16} Husband appealed the trial court's ruling and, while the appeal was pending, continued to not pay spousal support. At the sentencing hearing on January 17, 2003, Husband was again offered the opportunity to purge his contempt and avoid imposition of his sentence. Again, Husband refused to purge his contempt and refused to pay his on-going support obligation. Following the years of defiance on the part of Husband and the numerous opportunities to purge presented to him by the trial court, this Court does not find the trial court's finding of contempt to be arbitrary or capricious.
 {¶ 17} The critical fact remains unchanged: A court order must be obeyed by any person who comes under its ambit, otherwise the dignity and authority of the courts would be compromised. Attorneys and litigants who simply do not agree with a court order or its terms are not exempt from compliance on mere philosophical grounds.
 {¶ 18} Sadly, after years of attempting to garner Husband's compliance with the 1998 court order to pay spousal support to Wife, the trial court was left with no option but to hold Husband in contempt and sentence him accordingly. Consequently, we find that the trial court did not abuse its discretion when it found Husband in contempt.
 III {¶ 19} Husband's assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
CARR, P.J., BATCHELDER, J., CONCUR
[1] The record reveals that at the time of the instant appeal, Husband was approximately $58,000 in arrears.