[Cite as *Bridgeland v. Bridgeland*, 2021-Ohio-2587.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DAVID J. BRIDGELAND,                  :

    Plaintiff-Appellee,          :

                                No. 109831

    v.                              :

TERRESITA P. BRIDGELAND,             :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 29, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-15-356214

---

### *Appearances:*

Jeffrey V. Hawkins, *for appellee.*

Tyresha Brown-O'Neal, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Terresita P. Bridgeland ("Wife"), appeals from the trial court's judgment granting a show-cause order in favor of plaintiff-appellee, David J. Bridgeland ("Husband"). Wife raises the following assignment of error for review:

The trial court erred when it granted plaintiff's motion to show cause.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} Husband and Wife were married on June 22, 2007. On March 12, 2015, Husband and Wife filed a joint petition for dissolution of marriage. On April 27, 2015, the trial court issued a final decree of dissolution and adopted the terms of a separation agreement attached to the parties' petition. Relevant to this appeal, the dissolution decree required Wife to "use her best efforts to remove Husband's name from all existing mortgages within 365 days of the Court granting a decree of dissolution herein."

{¶ 4} On May 31, 2019, Husband filed a motion to show cause, requesting the trial court to find Wife in contempt of court based on her failure to comply with the trial court's order to refinance the parties' marital home and remove Husband's name from all existing mortgages.

{¶ 5} A brief hearing was held to address the show-cause motion on October 8, 2019. At the hearing, Husband testified that, based on his personal knowledge, Wife had not complied with her court-ordered obligation to use her best efforts to remove him from all existing mortgages within 365 days of the dissolution decree. Husband stated that his name is still on the mortgage associated with the parties' marital home, and that he has received no documentation from Wife to suggest she has made any effort to refinance the mortgage. During his cross-

examination, Husband conceded that he and Wife jointly entered into a loan-modification agreement with their mortgage lender in 2015.  As of the date of the hearing, the mortgage had an outstanding balance of $101,760, while the property was valued at $45,000.  Husband further admitted that he was aware of Wife's finances at the time the loan-modification agreement was executed.

{¶ 6} Wife denied the allegations set forth in the show-cause motion and maintained that she has continuously made reasonable efforts to refinance the subject mortgage but was unable to do so due to her poor credit score. Wife testified that in the year following the parties' dissolution of marriage, she spoke with U.S. Bank and obtained information regarding the steps she would need to take in order to refinance the mortgage.  Thereafter, Wife attempted to refinance the mortgage with Wells Fargo at some point during 2015 but was unsuccessful because "[her] credit was awful."  (Tr. 21.)  In July 2019, Wife attempted to refinance the home mortgage with U.S. Bank Home Mortgage, but was denied due to her credit history. *See* exhibit No. Petitioner-02, D.  In addition, Wife attempted to refinance the home mortgage with Quicken Loans, Inc. in July 2019.  Again, she was denied due to her "credit history: current/previous slow payments, judgments, liens or [bankruptcy]." *See* exhibit No. Petitioner-02, E.

{¶ 7} Wife testified that despite her inability to refinance the mortgage since 2015, she has taken necessary actions to strengthen her credit score and thereby comply with the court's order.  For instance, in October 2017, Wife enrolled in a program with a debt-consolidation company in an effort to improve her credit score.

Wife stated that she has made significant progress towards improving her credit and believes her ability to refinance the mortgage will greatly increase once she completes the debt-consolidation program.

{¶ 8} On cross-examination, Wife reiterated that from April 27, 2015, to April 27, 2016, she attempted to remove Husband from the existing mortgage. She conceded, however, that she did not have any documentation to verify that she met with U.S. Bank or Wells Fargo during this one-year time period. Wife explained that she did not maintain the rejection letters because "they got lost in the shuffle." (Tr. 16.) She further testified that, despite her attempts, she was unable to obtain the rejection letters directly from U.S. Bank or Wells Fargo in preparation for the contempt hearing. Thus, Wife admitted that U.S. Bank and Wells Fargo did not "have anything to verify [her] testimony" regarding the actions she took in the year following the issuance of the dissolution decree. (Tr. 17.)

{¶ 9} On December 31, 2019, the magistrate issued a decision, finding Wife in contempt of court. The magistrate stated, in relevant part:

> It appears that [Wife] has had some financial difficulties and has been working with a debt consolidation program since 2017. In addition, she has provided evidence that she tried to refinance in the past two years. However, this does not explain her failure to act in 2015 and 2016. As such, she will be found in contempt for failure to refinance and remove her ex-husband's name from the mortgage prior to April 27, 2016, as ordered.

{¶ 10} Wife was sentenced to 30 days in jail but was permitted to purge the contempt order by complying with the following:

Refinance the marital home within six months of this order or in the alternative list the home for sale * * *, paying off the money owed to the lender first upon sale of the home and thereby releasing [Husband] for the mortgage debt owed to the lender.

{¶ 11} Wife raised objections to the magistrate's decision, arguing that the magistrate's determination that she did not make reasonable efforts to refinance the premises within the timeframe outlined in the divorce decree was contrary to law and fact. In addition, Wife argued the magistrate's purge order was beyond the scope of the parties' dissolution decree and the remedies available to the court. Wife also filed supplemental objections to the magistrate's decision, which incorporated references to the transcript of the proceedings.

{¶ 12} On June 26, 2020, the trial court sustained Wife's second objection. The court determined that "it was impossible for [Wife] to satisfy the purge conditions," and "there [was] no provision in the decree requiring [Wife] to sell the home." However, the trial court found no merit to Wife's first objection and affirmed the magistrate's determination that Wife was in contempt of court for violating the dissolution decree. A 30-day jail term was suspended on the condition that Wife purge her contempt by paying Husband "$22,500 in 24 monthly installments, equaling $937.50 per month."[1]

{¶ 13} Wife now appeals from the trial court's judgment.

---

[1] Wife does not challenge the reasonableness of the trial court's purge order in this appeal.

## II. Law and Analysis

{¶ 14} In her sole assignment of error, Wife argues the trial court erred when it granted Husband's motion to show cause because the judgment was not supported by competent, credible evidence. Wife contends that she was in compliance with the "best efforts" requirement of the dissolution decree, but was unable to comply with the decree because "[she] could not refinance the property because of her financial status." In contrast, Husband submits that, regardless of the actions taken by Wife after April 2016, "the court order gave [Wife] one year to refinance and she made no attempt to do so within that one year."

{¶ 15} "Contempt is defined as a disregard of, or disobedience to, an order or command of judicial authority." *Palnik v. Crane*, 8th Dist. Cuyahoga No. 107400, 2019-Ohio-3364, ¶ 54. It is "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. "The purpose of contempt proceedings is to secure the dignity of the courts and the uninterrupted and unimpeded administration of justice." *Id.* at paragraph two of the syllabus. A court has both inherent and statutory authority to punish contempt. *In re Contempt of Morris*, 110 Ohio App.3d 475, 479, 674 N.E.2d 761 (8th Dist.1996).

{¶ 16} "'Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.'" *Pugh v. Pugh*, 15 Ohio St.3d 136, 140, 472

N.E.2d 1085 (1984), quoting *McComb v. Jacksonville Paper* Co., 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949).

{¶ 17} In a civil contempt proceeding, the movant bears the initial burden of demonstrating by clear and convincing evidence that the other party violated an order of the court. *Hissa v. Hissa*, 8th Dist. Cuyahoga Nos. 99498 and 100229, 2014-Ohio-1508, ¶ 19, citing *Flowers v. Flowers*, 10th Dist. Franklin No. 10AP-1176, 2011-Ohio-5972, ¶ 9; *Brown v. Executive 200, Inc.*, 64 Ohio St.2d 250, 416 N.E.2d 610 (1980). "Clear and convincing evidence" is evidence that will form a firm belief in the mind of the trier of fact as to the facts sought to be established. *Cincinnati Bar Assn. v. Massengale,* 58 Ohio St.3d 121, 122, 568 N.E.2d 1222 (1991). Determination of clear and convincing evidence is within the discretion of the trier of fact. The trial court's decision should not be disturbed as against the manifest weight of the evidence if the decision is supported by some competent and credible evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Geary v. Geary*, 2015-Ohio-259, 27 N.E.3d 877, ¶ 34 (5th Dist.).

{¶ 18} "'A prima facie case of contempt is established when the order is before the court along with proof of the contemnor's failure to comply with it.'" *DeMarco v. DeMarco*, 10th Dist. Franklin No. 09AP-405, 2010-Ohio-445, ¶ 25, quoting *Dzina v. Dzina*, 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497. Proof of

a purposeful, willful or intentional violation of a court order is not a prerequisite to a finding of contempt. *Collins v. Collins*, 8th Dist. Cuyahoga No. 105945, 2018-Ohio-1512, ¶ 26, citing *Pugh v. Pugh*, 15 Ohio St.3d 136, 142, 472 N.E.2d 1085 (1984). "Once the prima facie case has been established by clear and convincing evidence, the burden shifts to the non-moving party to either rebut the initial showing of contempt or establish an affirmative defense by a preponderance of the evidence." *Allen v. Allen*, 10th Dist. Franklin No. 02AP-768, 2003-Ohio-954, ¶ 16.

{¶ 19} We review a contempt finding for abuse of discretion. *Palnik,* 8th Dist. Cuyahoga No. 107400, 2019-Ohio-3364, at ¶ 53. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} On appeal, Wife argues the trial court's judgment was not supported by competent and credible evidence because the record and incorporated exhibits demonstrated that "[she] could not refinance the property because of her financial status which was known by the parties at the time of the decree." Wife maintains that she acted in compliance with the provision's "best efforts" requirement, but that "the reality is refinancing is impossible given the parties' current financial status."

{¶ 21} While impossibility is a valid defense to a civil contempt charge, "'in raising this defense, the defendant has a burden of production.'" *Lahoud v. Tri-Monex, Inc.*, 8th Dist. Cuyahoga No. 96118, 2011-Ohio-4120, ¶ 54, quoting *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). The defendant "must show 'categorically and in detail' why [he or] she is unable to

comply with the court's order." *Briggs v. Moelich*, 8th Dist. Cuyahoga No. 97001, 2012-Ohio-1049, ¶ 15, quoting *Lahoud* at ¶ 54; *Allan v. Allan*, 8th Dist. Cuyahoga No. 101700, 2015-Ohio-2037, ¶ 12.

{¶ 22} In this case, the record contains ample evidence regarding the parties' finances, the status of the mortgage, and Wife's poor credit history. However, the dissolution decree did not require Wife to refinance the mortgage within 365 days. Rather, the provision required her to exercise her *best efforts* to obtain refinancing within 365 days. Thus, the focus of the contempt inquiry is not whether it was impossible for Wife to refinance the mortgage, but whether it was impossible for her to exercise her best efforts within the applicable 365-day time frame.

{¶ 23} The phrase, "best efforts," is defined as:

> Diligent attempts to carry out an obligation; esp., all actions rationally calculated to achieve a stated objective, to the point of leaving no possible route to success untried. As a standard, a best-efforts obligation is stronger than a good-faith obligation. Best efforts are measured by the measures that a reasonable person in the same circumstances and of the same nature as the acting party would take.

*Black's Law Dictionary* (11th Ed.2019). This definition, while marked by flexibility and reasonable breadth, rather than meticulous specificity, provides sufficient notice as to what efforts are required.

{¶ 24} After careful review, we find the record supports the trial court's finding, by clear and convincing evidence, that that Husband met his initial burden of proof that Wife had violated the order of the trial court. At trial, Husband established that his name remained on the residential mortgage more than four

years after the dissolution decree was entered. He further testified that, despite his requests, Wife produced no documentation to suggest she attempted to refinance the mortgage within one year of the decree.

{¶ 25} Moreover, contrary to Wife's claims of impossibility, we are unable to conclude that the trial court abused its discretion in determining that Wife failed to rebut the initial showing of contempt or otherwise establish an affirmative defense. In this case, there is no dispute that Wife took actions in 2017 and 2019 to refinance the mortgage. The record reflects that Wife enrolled in a debt consolidation program to strengthen her credit score and formally filed applications for financing with U.S. Bank Home Mortgage and Quicken Loans, Inc. However, these actions occurred well after the 365-day time period mandated by the dissolution decree. As stated, the financial circumstances that have precluded Wife from refinancing the home since the entry of the dissolution decree did not render it impossible for Wife to take the necessary steps to improve her credit in the year following the dissolution of marriage. Thus, Wife's conduct in 2017, 2018, and 2019 are immaterial to the issue of contempt, as the trial court's order obligated Wife to use her best efforts to refinance the mortgage between April 27, 2015, and April 27, 2016.

{¶ 26} Regarding the time period of April 27, 2015, to April 27, 2016, Wife maintains that she met with two separate financial institutions in an attempt to comply with the court's order, but was ultimately denied refinancing due to her low credit score. Wife therefore contends that she exercised her best efforts to remove Husband from the mortgage. With respect to Wife's testimony at the contempt

hearing, we note that the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180 (1990); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997) (The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page."). As reflected in the court's judgment entry, the trial court gave little weight to Wife's unsupported assertions due to her failure to produce documentary evidence to "substantiat[e] her testimony that she tried to refinance the mortgage in 2015 and 2016." Deferring to the trier of fact's assessment of credibility, we cannot say the court arbitrarily concluded that Wife failed to diligently attempt to carry out the refinancing obligation set forth in the dissolution decree within one year of its entry.

{¶ 27} Based on the foregoing, the trial court's contempt decision was not against the weight of the evidence and the trial court did not abuse its discretion in finding Wife in contempt. Wife's sole assignment of error is overruled.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR